FILED

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA, IN AND FOR PINELLAS COUNTY
CIVIL DIVISION

02 JAN 11 PM 2: 36

JOHN PETERSON, as Personal Representative
of the Estate of LISA PETERSON, Deceased,
                Plaintiff,

vs.

GENERAL NUTRITION CORPORATION,
a foreign corporation, TWIN LABORATORIES, INC.,
a foreign corporation, BELLWEATHER PROPERTIES
OF FLORIDA LIMITED, a Florida Limited
Partnership, D/B/A THE COUNTRYSIDE MALL
and FIRST DOE through ONE
HUNDREDTH DOE, inclusive,
                Defendants.

Case No. 01-8945C121

8:02-cv-56-T-17MSS

RECEIVED
CIVIL COURT RECORDS

NOV 2 9 2001

KARLEEN F. De BLAKER
CLERK CIRCUIT COURT
PINELLAS COUNTY

Date Complaint filed:  11 | 29 | 0 1

## Complaint

Plaintiff, JOHN PETERSON, as Personal Representative of the Estate of LISA

PETERSON, deceased, sues the Defendants, GENERAL NUTRITION CORPORATION

(GNC), TWIN LABORATORIES, INC., (TWIN LAB), BELLWEATHER PROPERTIES OF

FLORIDA LIMITED, a Florida Limited Partnership. D/B/A THE COUNTRYSIDE MALL

(THE MALL), and FIRST DOE through ONE HUNDREDTH DOE, inclusive, for the wrongful

death of LISA PETERSON and alleges:

### Jurisdiction and Venue

1.     This is an action under the Florida Wrongful Death Act for damages in excess of

Fifteen-Thousand Dollars ($15,000.00) exclusive of attorneys' fees, interest and

costs.

2.     The Decedent, LISA PETERSON, died on November 30, 1999, in Pinellas

County, Florida.  At the time of her death, the decedent was domiciled in Pinellas

**SCANNED**

County Florida.  The Estate of LISA PETERSON, deceased, is pending in the

Circuit Court of Pinellas County, Florida, Probate Division.

3.     The Plaintiff, JOHN PETERSON, has been appointed Personal Representative of

the Estate of LISA PETERSON, deceased.

4.     The Plaintiff, JOHN PETERSON, Personal Representative of the Estate of LISA

PETERSON, deceased, is the proper party to bring this action under Section

768.20, Fla. Stat., for the benefit of the decedent's survivors and on behalf of her

estate, to recover all damages authorized under the Florida Wrongful Death Act.

5.     The potential beneficiaries of the recovery in this action and the relationship to

the decedent are: JOHN PETERSON, father of decedent, and LINDA

PETERSON, mother of decedent.

6.     The above named individuals constitute all of the survivors of Plaintiff's

Decedent pursuant to the Florida Wrongful Death Act.

7.     Plaintiff is informed and believes, and thereon alleges that at all times mentioned,

Defendant GNC, is a corporation organized and existing under and by virtue of

the laws of the State of Pennsylvania, or laws of some other state jurisdiction, and

that said defendant is authorized to do and is doing business in the State of

Florida.  GNC is subject to the jurisdiction of this Court pursuant to F.S. §48.193,

by virtue of operating, conducting, engaging in, or carrying on a business in

Florida or by having an office or agency in Florida, and/or committing a tortious

act in Florida, and/or causing injury to persons in Florida arising out of an act or

omission outside of Florida by GNC when GNC was engaged in solicitation or

2

service activities within Florida, or the products sold were used or consumed within Florida in the ordinary course of commerce, trade or use.

8.  Plaintiffs are informed and believe, and thereon alleges that at all times mentioned Defendant TWIN LAB is a corporation organized and existing under and by virtue of the laws of the State of New York, or laws of some other state jurisdiction, and that said defendant was and is authorized to do and is doing business in the State of Florida. TWIN LAB is subject to the jurisdiction of this Court pursuant to F.S. §48.193, by virtue of operating, conducting, engaging in, or carrying on a business in Florida or by having an office or agency in Florida, and/or committing a tortious act in Florida, and/or causing injury to persons in Florida arising out of an act or omission outside of Florida by TWIN LAB when TWIN LAB was engaged in solicitation or service activities within Florida, or the products sold were used or consumed within Florida in the ordinary course of commerce, trade or use.

9.  Plaintiff is informed and believes, and thereon alleges that at all times mentioned, Defendant, THE MALL is a corporation or limited partnership, organized and existing under and by virtue of the laws of the State of Florida, or laws of some other state jurisdiction, and that said defendant is authorized to do and is doing business in the State of Florida. THE MALL is subject to the jurisdiction of this Court pursuant to F.S. §48.193, by virtue of operating, conducting, engaging in, or carrying on a business in Florida or by having an office or agency in Florida, and/or committing a tortious act in Florida, and/or causing injury to persons in Florida arising out of an act or omission outside of Florida by THE MALL when

3

THE MALL was engaged in solicitation or service activities within Florida, or the products sold were used or consumed within Florida in the ordinary course of commerce, trade or use.

10.    The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants FIRST DOE through ONE HUNDREDTH DOE, inclusive, are unknown to plaintiff at this time, who therefore, pursuant to F.S. §49.071, sues said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, plaintiff will amend this complaint accordingly.  Plaintiff is informed and believes, and thereon alleges, that each defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the plaintiff, as hereinafter alleged.  Plaintiff is informed and believes, and thereon alleges that at all times mentioned, that one or more defendant FIRST DOE through ONE HUNDREDTH DOE, inclusive, are a corporation organized and existing under and by virtue of the laws of the State of Florida, or laws of some other state jurisdiction, and that said defendants are authorized to do and are doing business in the State of Florida.  FIRST DOE through ONE HUNDREDTH DOE, inclusive, are subject to the jurisdiction of this Court pursuant to F.S. §48.193, by virtue of operating, conducting, engaging in, or carrying on a business in Florida or by having an office or agency in Florida, and/or committing a tortious act in Florida, and/or causing injury to persons in Florida arising out of an act or omission outside of Florida,    FIRST DOE through ONE

4

HUNDREDTH DOE, inclusive, was engaged in solicitation or service activities within Florida, or the products sold were used or consumed within Florida in the ordinary course of commerce, trade or use. Further Plaintiff alleges that one or more DOE defendants is a resident of the State of Florida.

### General Allegations

11.     At all times herein mentioned, each of the defendants, TWIN LAB, GNC, THE MALL and DOES One (1) through One-Hundred (100), inclusive, was the agent, servant, employee and/or joint venturer of his co-defendants, and each of them, and at all times, each defendant was acting in the full course and scope of said agency, service, employment and/or joint venture.

12.     At all times herein mentioned, the defendants, TWIN LAB, GNC, THE MALL and DOES One (1) through One-Hundred (100), inclusive, acted in concert of action with each other, and conspired with each other, each defendant was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line of a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, manufacturing, labeling, distributing, offering for sale, selling, inspecting, marketing, warranting, rebranding, manufacturing, for others, packing and advertising herbal and other products incorporated into and sold as dietary supplement the name of which is Twin Labs Diet Fuel.  The defendants at all times acted in concert of action with each other in the manufacturing, sale and distribution of Diet Fuel and conspired

with each other to defraud Plaintiff's Decedent by willfully and intentionally misrepresenting and concealing from Plaintiff's Decedent the dangerous and defective nature of the product which directly and proximately caused the death of Lisa Peterson, and the damages sustained by Plaintiff as a result.

13.   Plaintiff's Decedent relied on defendants' misrepresentations and fraud by purchasing and using Diet Fuel in reliance on defendants' representation that Diet Fuel was a safe, all-natural dietary supplement, when in fact, Diet Fuel was a defective drug, which caused and contributed to Plaintiff's Decedent's death.

14.   Each of the herein named defendants are liable for fraud and the tortious conduct of each co-conspirator, joint tortfeasor acting in concert, successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that manufactured, labeled, distributed, offered for sale, sold, inspected, marketed, warranted, rebranded, manufactured for others and advertised herbal and other products used in and ultimately sold as Twin Labs Diet Fuel on the ground that defendants and each of them acted in concert and conspired with each other to manufacture, label, distribute, offer for sale, market, warrant, package, assemble, test and advertise a certain product, and the herbal and other products used in Diet Fuel.

15.   The specific fraudulent and intentional misrepresentation made by Defendant TWIN LAB, a joint tortfeasor, and co-conspirator with the other defendants, are

6

set forth on the label on the bottle in which Diet Fuel was sold. Specifically, that

Diet Fuel was a dietary supplement instead of a drug.

16.     Defendants TWIN LAB, GNC, THE MALL and DOES One (1) through One-

Hundred (100), inclusive, knew that Diet Fuel's labeling was fraudulent and that

Diet Fuel contained dangerous levels of Ephedrine, Guarana, and Chromium and

L-Carnitine that defendants fraudulently misrepresented and concealed the

dangers of the ingredients from Plaintiff's Decedent. Diet Fuel contained the

following ingredients known to cause the following effects:

L-Carnitine: L-Carnitine can cause nausea and vomiting, heartburn, gastritis
diarrhea and seizures.

Garcinia cambogia: Garcinia cambogia is a stimulant that contains hydroxy citric
acid or HCA and has a historical use as a purgative and for treating worms and
parasites. Garcinia cambogia may also act as a laxative since resins contain
benzphenones and xanthones and mucilages. HCA, an active ingredient in
Garcinia cambogia inhibits lipogenesis, increases production of glycogen in liver
increasing body temperature by thermogenesis.

17.     Defendant GNC, like the other defendants, acted in concert and conspired with

the defendants and each of them. Defendant GNC's role in the manufacture and

distribution process was to assume the responsibility and the duty to sell and

distribute Diet Fuel and the herbs used in Diet Fuel throughout the United States

through GNC's more than one thousand stores.

18.     Defendant GNC knew that Diet Fuel and the herbs used in Diet Fuel were

dangerous and defective. GNC also knew Diet Fuel contained false and

fraudulent representations on the package Diet Fuel came in and that GNC sold.

GNC acted in concert of action with the defendants and each of them by

7

concealing the dangers and defects from Plaintiff's Decedent by selling Diet Fuel as an all-natural dietary supplement.

19.   GNC's fraud also continued after Plaintiff's Decedent's death and damages by continuing to sell Diet Fuel without any warnings after the dangers were known. Defendants' fraud was done intentionally to deceive Plaintiff's Decedent and conceal from Plaintiff's Decedent the facts showing the dangers and defects in Diet Fuel and GNC's wrongdoing.

20.   GNC's fraud continues to this day since GNC continues to sell Diet Fuel without any efforts to warn the public of Diet Fuel's dangers and defects.

21.   Notwithstanding Defendant GNC's knowledge of the dangers of the Twin Labs "Ripped Fuel", defendant sold Diet Fuel to Plaintiff's Decedent without ever telling Plaintiff's Decedent about the dangers or defects in Diet Fuel or the herbs used in Diet Fuel. Moreover, defendant intentionally and fraudulently concealed these dangers and defects from Plaintiff's Decedent so as to induce Plaintiff's Decedent to buy from GNC. Plaintiff's Decedent relied on GNC's expertise as a health/food store and on GNC's representations that Diet Fuel was safe. Diet Fuel was not safe and GNC knew it was not safe.

22.   Defendant GNC's role as a seller of Twin Lab's "Ripped Fuel" is consistent with the bad custom and habit that GNC has demonstrated in the past. Defendant GNC was and still is a manufacturer and distributor of numerous so called "health food" products.

23.   To this date, GNC stores continue to sell and distribute TWIN LABS Diet Fuel without any warnings to its customers, thereby showing GNC's intent to defraud

8

as well as GNC's willful and reckless disregard for the safety and well-being of its customers.

24.    GNC's fraudulent conduct, and willful and wanton disregard for the safety of Plaintiff's Decedent, is also evident from GNC's past history of similar conduct as one of the world's largest health food stores.

25.    GNC has been the target of numerous government regulatory actions over the years. In 1969, the FTC brought false advertising charges regarding claims for Geri-Gen ("therapeutic tonic") and Homotrex. The case was settled by a consent decree in which GNC was prohibited from advertising that such products might be useful in preventing or relieving tiredness, listlessness, or "rundown" feelings. In 1973, a supply of vitamin C/bioflavonoid tablets was seized and destroyed under a consent agreement after the FDA charged that their labeling made false and misleading nutritional claims. In 1980, the FDA seized a powdered-milk product touted as a cure for arthritis and the Postal Service stopped false representations for Model-Etts, an alleged reducing aid. In 1981, the FDA brought an action against GNC for claiming that Lysine cured genital herpes. In 1982, the Postal Service charged that advertising for Advantage Starch Block contained false representations that the product blocked the absorption of calories and starch-containing foods. A false representation order was obtained, and the California Department of Health issued an embargo. During 1984, the Postal Service charged GNC with making false representations for thirteen products: Risk Modifier (a nutrient mixture claimed to decrease cancer risk); Life Expander Choline Chloride (claimed to improve memory); Mental Acuity Formula

9

(supposedly able to prevent or retard memory loss -due to aging); Life Expander

Fat Fighter (containing DHEA, claimed to cause weight loss without dietary

modification); Challenge Maximum Body Builder (claimed to have special

muscle-building properties); L-Gultamine tablets (claimed to "keep you mentally

and emotionally in balance"); Lipotropic Fat Fighter tablets (a nutrient mixture

that supposedly could reduce body fat); Spirulina (which supposedly will "turn

off your brain's appetite control center"); the 24Hour Diet Plan and the Practical

Diet Plan (both "guaranteed" to produce weight loss of "up to 10 pounds in two

weeks); Life Expander Growth Hormone Releaser (claimed to cause weight loss

without dieting); Herbal Diet Formula (supposedly capable, by itself, of causing

weight loss); and Inches Be Gone (a body-wrapping cream claimed to reduce any

area where you want to lose inches.) The complaints were settled with a consent

agreement.  In 1984, the FTC charged GNC with making deceptive claims that its

Healthy Greens might help people prevent cancer.  GNC's ads suggested that this

product, which was composed of dehydrated vegetables and a few vitamins, was

based on findings of the 1982 National Academy of Sciences report on diet and

cancer.

26.   The specific fraudulent and intentional misrepresentations made by

Defendants TWIN LAB, GNC, THE MALL and DOES One (1) through One-

Hundred (100), are as follows:

a)   Defendants fraudulently represented that Diet Fuel was a safe dietary
supplement instead of a dangerous and defective drug that contained Ma Huang
also known as ephedra; the active constituent being ephedrine, a potent natural
drug used for relieving constriction and congestion associated with bronchial
asthma due to its stimulant action on the central nervous system.  The ingredient

ma huang increases both systolic and diastolic blood pressure.  It increases heart
rate and can cause palpitations, and dizziness.  It also has a diuretic effect.  It is
classified by the FDA as an Herb of Undefined Safety. It has no food or dietary
value within the meaning of 21 CFR 101.14.

b)  Defendants also fraudulently represented that Diet Fuel contained
Guarana, an all-natural and safe ingredient. Guarana in reality contains caffeine as
its principle active ingredient.  Caffeine is also an effective stimulant of the
central nervous system, which can cause rapid and irregular heartbeat.  It is also a
diuretic. Defendants concealed these material facts from Plaintiff's Decedent.

c)  Both ephedrine and caffeine are adrenergic stimulants used for weight loss and
not a dietary supplement.

d)  Defendants concealed that Chromium picolinate has toxic effects and
chromium also has a diuretic effect.  Defendants also fraudulently represented
that the level of Chromium in Diet Fuel could be safely taken, i.e., the user should
take two to three capsules before meals and workouts.  However, the National
Research Council recommends that people use 0-200 micrograms of chromium
picolinate a day as a safe and adequate daily allowance.  In short, defendants'
recommendation falsely represents that it is safe to take three times the amount of
Chromium that the National Council recommends as safe.

e)  Defendants knew that Diet Fuel labeling and instructions for use were
fraudulent and that Diet Fuel contained dangerous levels of stimulants and
diuretics and that Defendants fraudulently misrepresented and concealed these
dangers from Plaintiff's Decedent.  In short, defendants knew that the ingredients
used in Diet Fuel were dangerous, and that their instruction for use put the
consumer at serious risk of harm. Defendants also knew that the ingredients in
Diet Fuel were not approved for use by the Food and Drug Administration or by
law. They also knew that products containing Ma Huang and Guarana had caused
numerous injuries and that products containing Ma Huang were being banned in
several states and in Canada.  Notwithstanding this knowledge, defendants
continued to sell Diet Fuel in conscious disregard for the safety and well-being of
Plaintiff's Decedent and the general public.

27.     Defendants, TWIN LAB, GNC, THE MALL and DOES One (1) through One-

Hundred (100), inclusive, intentionally violated the law by manufacturing and

selling Diet Fuel with ingredients that did not have government approval for food

use by various government agencies.  Defendants intentionally concealed these

facts from Plaintiff's Decedent.  Defendants also misrepresented other facts,

11

knowing that Plaintiff's Decedent and the public would rely on the false and

fraudulent claims made on Diet Fuel and would be deceived by the concealment

of these facts and misrepresentations and further, would innocently rely on the

misrepresentations made by defendants and DOES One (1) through One-Hundred

(100).

28.     Plaintiff's Decedent justifiably relied on defendants' false and misleading

representation by deciding to purchase and consume the Diet Fuel thinking it was

a safe dietary supplement. The false and misleading representations were made

over a period of months prior to Plaintiff's Decedent's death.

29.     Plaintiff's Decedent relied on the false and fraudulent representations made by

defendants and used Diet Fuel and the ingredients in the product in a foreseeable

manner and was injured as a direct result of the defective nature of defendant's

product.  Again, because defendants TWIN LAB, GNC, THE MALL and DOES

One (1) through One Hundred (100), were acting in concert, and as agents and

joint tortfeasors they adopted and ratified that false and fraudulent statements

made by TWIN LAB on the labels, in the advertisements and in the store

displays.

30.     But for defendants' fraud and concealment, Plaintiff's Decedent would not have

consumed Diet Fuel and sustained the injuries and damages and death Plaintiff is

now claiming.

31.     Defendants, TWIN LAB, GNC, THE MALL and DOES One (1) through One-

Hundred (100), at all times knew of the dangerous and defective nature of Diet

Fuel yet they intentionally, willfully, and recklessly concealed these dangers from

Plaintiff's Decedent by continuing to manufacture, market, distribute and promote Diet Fuel and the herbal products and other products used in it as a safe product, well aware of the fraudulent misrepresentations they were making about the nature of Diet Fuel and its safety as a dietary supplement. By concealing the dangers and by marketing the product knowing of the dangers associated with the ingredients used in Diet Fuel, defendants are guilty of oppression, fraud, and malice in that their conduct has shown willful and conscious disregard for the safety of Plaintiff's Decedent and the general public for the sole purpose of defendants' economic gain. Defendants, by marketing a product with ingredients defendants knew were dangerous and could cause harm and injury without proper warnings and instructions to the consumer, have showed a conscious and intentional, willful and reckless disregard for Plaintiff's Decedent's safety and well-being as well as the safety and well-being of the general public. By marketing the product using false and misleading labeling and advertising, defendants acted with fraud and with the extreme indifference to the health and safety and rights of Plaintiff's Decedent, as well as the general public.

32.     Defendants' despicable conduct and extreme indifference to the health and well-being of consumers like Plaintiff's Decedent is further demonstrated by the fact that after FDA issued Health Alerts and after several states banned products containing Ma Huang, defendants continued to manufacture, market and sell Diet Fuel.

33.     At all times defendants' conduct involved intentional misrepresentations of material facts known to the defendants with the intent to deceive Plaintiff's

13

Decedent and other consumers in order to make a profit by causing them to believe that Diet Fuel was a safe dietary supplement that would help people build muscles through all natural and safe ingredients and it contained no dangerous drugs.

34. Defendants' conduct was carried on with a willful and conscious disregard for the safety of the Plaintiff's Decedent since defendants knew that Diet Fuel would not build muscles or promote lean muscle to give your body shape and tone.

35. Defendants knew that Diet Fuel was intended to cause weight loss by giving people all natural stimulant drugs and diuretics that were dangerous and known to cause adverse health effects including the death of Plaintiff's Decedent.

36. Defendants knew that this was the intended effect of Diet Fuel since it is well established in the literature in existence at the time Diet Fuel was first manufactured and sold that Ma Huang contained ephedra, a stimulant and diuretic, and that caffeine was a well known stimulant and diuretic.

37. Defendants knew of the dangers associated with the ingredients used in Diet Fuel before Plaintiff's Decedent purchased defendants' product.

38. Defendants TWIN LAB, GNC, THE MALL and DOES One (1) through One-Hundred (100), and each of them, were and still are involved in the manufacture, distribution and sale of Diet Fuel. They have all acted in concert. They have all conspired to defraud Plaintiff's Decedent and the public. Diet Fuel is sold to the public as a food supplement, not a drug. It is represented as containing no harmful ingredients. Diet Fuel is also represented to be a dietary nutritional supplement that will enhance a person's metabolism in increasing strength and endurance.

14

TWIN LABS Diet Fuel is represented to be a high-tech thermogenic formula that can help get you a more imposing figure. It is also represented to be a state of the art metabolic enhancer that will give you greater vascularity, more striation and separation and sharpened edges, i.e., more muscles. These representations are false and Plaintiff's Decedent relied on them by purchasing Diet Fuel, consuming it and as a direct and proximate result suffering injuries and damages as a result. The representations and concealment of facts were done by defendants and each of them while acting in concert. They were done intentionally by defendants and each of them so as to mislead Plaintiff's Decedent.

39. Defendant TWIN LABS, through a company called "Advance Research Press," which Defendant TWIN LABS controls, publishes a magazine called "Muscular Development." The publication advertises and promotes the sales of products containing ephedrine also known as Ma Huang, despite their knowledge of the fact that this ingredient is dangerous. Further proof of TWIN LAB's willful and reckless indifference and fraudulent concealment of its products dangers is found in defendant's February 1994 10K report, wherein defendant notes that Canadian authorities had suspended the sales of products containing ephedrine because of injuries that were reported. Defendant's acknowledgment of this ban and their continued promotion and sale of products containing ephedrine is additional evidence of defendants' fraudulent conduct and willful and wanton disregard for the safety and welfare of Plaintiff's Decedent and the public in general.

40.     Defendants TWIN LAB, GNC, THE MALL and DOES One (1) through One-
        Hundred (100), and each of them, acting in concert, knew that the ingredients
        were drugs that acted as cardiac stimulants and diuretics disguised as a safe
        dietary supplement.  Defendants' false statements were done intentionally to
        prevent Plaintiff's Decedent from knowing what the herbs and other ingredients
        in Diet Fuel actually were.  Defendants had superior knowledge.  They knew of
        Plaintiff's Decedent's ignorance.  Consequently, the misrepresentation and
        nondisclosures was done to intentionally deceive Plaintiff's Decedent.  Plaintiff's
        Decedent relied on defendants' false and fraudulent misrepresentation and non-
        disclosure of information.  As a direct result of defendants' fraud, and Plaintiff's
        Decedent's reliance, Plaintiff's Decedent consumed defendants' products and the
        herbal products it contains and suffered physical and emotional injuries resulting
        in her death.

41.     Prior to the herein described injuries, the Defendants, TWIN LAB, GNC, THE
        MALL and DOES One (1) through One-Hundred (100) and each of them,
        manufactured, compounded, packaged, labeled, designed, constructed, fabricated,
        distributed, tested, analyzed, recommended, merchandised, advertised, inspected,
        promoted, supplied, sold, purchased, prescribed and administered Diet Fuel and
        the constituent products used as ingredients, with its components, ingredients and
        constituents, which was intended by said defendants to be used for the purpose of
        weight loss and energy.

16

42. From July 1999, and continuing until on or about Plaintiff's Decedent's death on
November 30, 1999, Plaintiff's Decedent consumed Diet Fuel and its ingredients
which was manufactured, compounded, packaged, labeled, designed, constructed,
fabricated, distributed, tested, analyzed, recommended, merchandised, advertised,
inspected, promoted, supplied, sold, purchased, prescribed and administered by
the defendants, and each of them.

43. The Defendants, TWIN LAB, GNC, THE MALL and DOES One (1) through
One-Hundred (100), inclusive, are directly and/or vicariously liable for causing
injury to decedent, decedent's estate and decedent's survivors.

44. As a proximate result of the herein described conduct of defendants, and each of
them, and the defects in Diet Fuel, Plaintiff's Decedent was caused to suffer
grievous, serious and severe injuries both physically and emotionally thereby
causing LISA PETERSON's death.

45. As a direct and proximate result of the wrongful death of LISA PETERSON, each
of the Decedent's survivors has suffered past and future loss of support and
services, as defined in Section 768.21(1), Florida Statutes. JOHN PETERSON
and LINDA PETERSON, individually, as parents of LISA PETERSON, deceased
have suffered mental pain and suffering, and medical and funeral expenses. The
estate of LISA PETERSON has sustained loss of earnings, loss of prospective net
accumulations of the estate which might reasonably have been expected but for
the wrongful death, and medical and funeral expenses. The Plaintiff, on behalf of

17

the survivors and the estate of LISA PETERSON, by this action, hereby seeks to
recover the aforementioned damages as well as any other damages allowable
under the Florida Wrongful Death Act.  Plaintiff hereby demands a jury trial for
all issues so triable.

46.     Any and all conditions precedent to the bringing of this action have occurred,
been waived, or otherwise been satisfied.

## COUNT I
### BREACH OF EXPRESS WARRANTY

Plaintiff, JOHN PETERSON, as Personal Representative of the Estate of LISA
PETERSON, deceased, sues the Defendants, GNC, TWIN LAB, THE MALL  and
FIRST DOE through ONE HUNDREDTH DOE, inclusive, for the wrongful death of
LISA PETERSON and alleges:

47.     Plaintiff hereby incorporates by reference, as if fully set forth herein, each and
every allegation contained in Paragraphs 1 through 46, inclusive, of the complaint
herein.

48.     Defendants TWIN LAB, GNC, THE MALL and DOES One (1) through One-
Hundred (100), inclusive, and each of them, manufactured, compounded,
packaged, designed, distributed, tested, constructed, fabricated, analyzed,
recommended, merchandised, advertised, promoted and sold the herbal and other
products which made up the product known as TWIN LABS Diet Fuel.

49.     At all times herein mentioned, defendants, and each of them, acting in concert, by
its officers, directors, and other agents utilized advertising media to urge the use
of Diet Fuel and expressly warranted and represented to Plaintiff's Decedent and
members of the general public that Diet Fuel was a safe dietary supplement that
could be used indefinitely.  These warranties were set forth on Diet Fuel's labels.

18

50.    At the time of making said express warranties, defendants, and each of them, acting in concert, had knowledge of the purpose for which Diet Fuel was to be used and warranted the same to be, in all respects, fit, safe and effective and proper for such purpose.

51.    Plaintiff's Decedent and the general public reasonably relied upon the skill and judgment of the defendants, and each of them, and upon said express warranties and representations in deciding to purchase and use Diet Fuel.

52.    Defendants, and each of them, acting in concert, possessed superior knowledge and failed to disclose that superior knowledge to consumers of Diet Fuel, including the Plaintiff's Decedent.  Defendants' failure to disclose the knowledge to Plaintiff's Decedent and the general community that Diet Fuel was not a safe dietary supplement, but rather, contained drugs which included harmful stimulants and diuretic ingredients that could cause harm to consumers who relied on these warranties.

53.    Said warranties and representations were untrue in that Diet Fuel proximately caused Plaintiff's Decedent's damages and other injuries because Diet Fuel was unsuited and unsafe for the use for which it was intended, and could, and did, thereby proximately cause Plaintiff's Decedent to sustain damages and injuries as herein set forth.

54.    As soon as the true nature of Diet Fuel and the fact that the warranty and representations were false was ascertained, all known defendants, and each of them, were duly notified, as required by law.

WHEREFORE, Plaintiff demands judgment on behalf of all survivors and the estate of LISA PETERSON, for damages against TWIN LAB, GNC, THE MALL and DOES One (1) through One-Hundred (100), costs of this action, and such further and other relief as the Court may deem just and appropriate.  Plaintiff hereby demands trial by jury.

19

## COUNT II
### BREACH OF IMPLIED WARRANTY

Plaintiff, JOHN PETERSON, as Personal Representative of the Estate of LISA PETERSON, deceased, sues the Defendants, GNC, TWIN LAB, THE MALL and FIRST DOE through ONE HUNDREDTH DOE, inclusive, for the wrongful death of LISA PETERSON and alleges:

55.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 46, inclusive, of the complaint herein.

56.     At all times herein mentioned, the defendants, and each of them, manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, sold, purchased, prescribed and administered Diet Fuel and the herbal products and other products used as ingredients in Diet Fuel as hereinabove described, and prior to the time that Plaintiff's Decedent used Diet Fuel, defendants, and each of them, impliedly warranted to Plaintiff's Decedent and the general public that Diet Fuel was of merchantable quality and safe for the use for which it was intended.

57.     Plaintiff's Decedent relied on the skill and judgment of defendants, and each of them, in using Diet Fuel.

58.     Diet Fuel was unsafe for its intended use. Further, Diet Fuel was not of merchantable quality, as warranted by the defendants, and each of them, in that it had dangerous properties and ingredients. When put to its intended use Diet Fuel became unsafe in that it would cause serious and severe injuries including, but not limited to electrolyte imbalances and, cardio-vascular abnormalities including heart attacks and strokes. Diet Fuel did proximately cause Plaintiff's Decedent to sustain injuries and death as herein set forth.

20

59. After Plaintiff's Decedent was made aware of the injuries as a result of the defects in Diet Fuel, notice was duly given to all known defendants, and each of them, of the breach of said warranty.

WHEREFORE, Plaintiff demands judgment on behalf of all survivors and the estate of LISA PETERSON, for damages against TWIN LAB, GNC, THE MALL and DOES One (1) through One-Hundred (100), costs of this action, and such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands trial by jury.

## COUNT III
### STRICT LIABILITY

Plaintiff, JOHN PETERSON, as Personal Representative of the Estate of LISA PETERSON, deceased, sues the Defendants, GNC, TWIN LAB, THE MALL and FIRST DOE through ONE HUNDREDTH DOE, inclusive, for the wrongful death of LISA PETERSON and alleges:

60. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 46, inclusive, of the complaint herein.

61. Defendants, and each of them, manufactured, compounded, packaged, designed, distributed, tested, constructed, fabricated, analyzed, recommended, merchandised, advertised, promoted and sold the herbal products and other products used as ingredients in Diet Fuel as well as Diet Fuel which was intended by defendants, and each of them, to be used as a dietary supplement.

62. At all times herein mentioned, Diet Fuel and the finished product's ingredients were defective and unsafe for their intended purpose by reasons of defects in its manufacturing, compounding, testing, packaging, labeling, warnings, lack of warnings, over-promotion and contents.

63.    Defendants, and each of them, acting in concert, knew that Diet Fuel and its
       ingredients were to be ingested by Plaintiff's Decedent and were ingested by
       Plaintiff's Decedent without inspection for defects arising from, but not limited
       to, the manufacturing, compounding, testing, labeling, packaging, merchandising,
       and advertising processes of Diet Fuel and its components products used as
       ingredients.

64.    At all times herein mentioned, Diet Fuel was being used by Plaintiff's Decedent
       in the manner in which it was intended to be used and or misused in a manner
       which was reasonably foreseeable by defendants and each of them. As a direct
       and proximate result of the defective nature of Diet Fuel and its ingredients
       Plaintiff's Decedent sustained the injuries and damages as herein alleged.

WHEREFORE, Plaintiff demands judgment on behalf of all survivors and the estate of

LISA PETERSON, for damages against TWIN LAB, GNC, THE MALL and DOES One

(1) through One-Hundred (100), costs of this action, and such further and other relief as

the Court may deem just and appropriate. Plaintiff hereby demands trial by jury.

**COUNT IV**
NEGLIGENCE

Plaintiff, JOHN PETERSON, as Personal Representative of the Estate of LISA

PETERSON, deceased, sues the Defendants, GNC, TWIN LAB, THE MALL and FIRST

DOE through ONE HUNDREDTH DOE, inclusive, for the wrongful death of LISA

PETERSON and alleges:

65.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and
       every allegation contained in Paragraphs 1 through 46, inclusive, of the complaint
       herein.

66.    At all times herein mentioned, defendants, and each of them, acting in concert, so
       negligently and carelessly manufactured, compounded, packaged, labeled,

22

designed, constructed, fabricated, distributed, tested or failed to test, analyzed, recommended, merchandised, advertised, inspected, promoted, supplied, sold, purchased, prescribed and administered the herbal products and other products used as ingredients in Diet Fuel as well as Diet Fuel to a class of persons of which the Plaintiff's Decedent is a member, so that Diet Fuel was defective, dangerous, and unsafe for the use and purpose for which it was intended.  Prior to the date which is the subject matter of this litigation, defendants, and each of them, directly and indirectly induced Plaintiff's Decedent to take Diet Fuel and thereby administered Diet Fuel to Plaintiff's Decedent for the purpose for which it was intended to be used.

67.   As a proximate result of the aforesaid carelessness and negligence of the defendants, and each of them, Diet Fuel caused severe injury to Plaintiff's Decedent and thereby proximately caused Plaintiff's Decedent to sustain damages and injuries as herein set forth.

WHEREFORE, Plaintiff demands judgment on behalf of all survivors and the estate of LISA PETERSON, for damages against TWIN LAB, GNC, THE MALL and DOES One (1) through One-Hundred (100), costs of this action, and such further and other relief as the Court may deem just and appropriate.  Plaintiff hereby demands trial by jury.

## COUNT V
### FRAUD
### AND CONSPIRACY TO COMMIT FRAUD

Plaintiff, JOHN PETERSON, as Personal Representative of the Estate of LISA PETERSON, deceased, sues the Defendants, GNC, TWIN LAB, THE MALL and FIRST DOE through ONE-HUNDREDTH DOE, inclusive, for the wrongful death of LISA PETERSON and alleges:

23

68.     Plaintiff hereby incorporates by reference, as if fully set forth herein, each and
        every allegation contained in paragraphs 1 through 46, inclusive, of the complaint
        herein.  Plaintiff would note in particular the incorporation of paragraphs 11
        through 41 which sets forth the specific fraudulent representations of Defendants
        TWIN LABS, GNC, THE MALL and DOES One (1) through One-Hundred
        (100), as well as the concert of action and conspiracy allegations making the
        representations of one applicable to its agents.

69.     Defendants, and each of them, manufactured, compounded, packaged, designed,
        distributed, tested, constructed, fabricated, analyzed, recommended,
        merchandised, advertised, promoted and sold their herbal products and other
        products used as ingredients in Diet Fuel as well as Diet Fuel which was intended
        by defendants, and each of them, to be used as a dietary supplement.

70.     As noted in paragraphs 11 through 41, at all times herein mentioned, defendants,
        and each of them, and falsely and fraudulently represented to Plaintiff's
        Decedent and members of the general public that Diet Fuel was a safe dietary
        supplement when Diet Fuel was in reality a dangerous and defective drug made
        up of dangerous drug product ingredients.

71.     The representations made by defendants and each of them was in fact false.  In
        truth, Diet Fuel was unfit for human use as a dietary supplement and Diet Fuel
        was in fact a dangerous drug and contained harmful ingredients.

72.     The specific fraudulent and intentional misrepresentations made by Defendants
        TWIN LABS, GNC, THE MALL and DOES One (1) through One-Hundred (100)
        are as follows:

        a) Defendants fraudulently represented that Diet Fuel is a safe dietary
        supplement instead of a dangerous and defective drug that contained Ma Huang
        also known as ephedra; the active constituent being ephedrine, a potent natural
        drug used for relieving constriction and congestion associated with bronchial

24

asthma due to its stimulant action on the central nervous system. The ingredient ma huang increases both systolic and diastolic blood pressure. It increases heart rate and can cause palpitations, and dizziness. It also has a diuretic effect. It is classified by the FDA as an Herb of Undefined Safety. It has no food or dietary value within the meaning of 21 CFR 101.14.

b) Defendants also fraudulently represented that Diet Fuel contained Guarana, an all-natural and safe ingredient. Guarana extract in reality contains caffeine as its principle active ingredient. Caffeine is also an effective stimulant of the central nervous system, which can cause rapid and irregular heartbeat. It is also a diuretic. Defendants concealed these material facts from Plaintiff's Decedent.

c) Both ephedrine and guarana are adrenergic stimulants used for weight loss and not a dietary supplement.

d) Diet Fuel also contained the following ingredient products known to cause the following effects:

    1.  L-Carnitine
        L-Carnitine used orally or intravenously has been associated with nausea, vomiting, abdominal cramps, heartburn, gastritis, diarrhea ,body odor and seizures.

    2.  Garcinia cambogia
        Garcinia cambogia is a stimulant that contains hydroxycitric acid or HCA and has a historical use as a purgative and for treating worms and parasites. Garcinia cambogia may also act as a laxative since resins contain benzophenones, xanthones and mucilages. HCA, an active ingredient in Garcinia cambogia inhibits lipogenesis, increases production of glycogen in liver increasing body temperature by thermogenesis.

e) Defendants knew that Diet Fuel's labeling and instructions for use were was fraudulent and that Diet Fuel contained dangerous levels of stimulants and diuretics and that defendants fraudulently misrepresented and concealed these dangers from Plaintiff's Decedent.

f) Defendants knew that the ingredients used in Diet Fuel were dangerous, and that their instruction for use put the consumer at serious risk of harm. Defendants also knew that the ingredients in Diet Fuel were not approved for use by the Food and Drug Administration or by law. They also knew that products containing Ma Huang and Guarana had caused numerous injuries and that products containing Ma Huang were being banned in several states and in Canada. Notwithstanding this knowledge defendants continued to sell Diet Fuel in conscious disregard for the safety and well-being of Plaintiff's Decedent and the general public.

g) Defendants intentionally violated the law by manufacturing and selling Diet Fuel with ingredients that did not have government approval for food use. Defendants intentionally concealed these facts from Plaintiff's Decedent. Defendants also misrepresented other facts, knowing that Plaintiff's Decedent and

the public would rely on the false and fraudulent claims made on Diet Fuel and would be deceived by the concealment of these facts and misrepresentations and further, would innocently rely on the misrepresentations made by defendants. Plaintiff's Decedent relied innocently relied on defendants' false and misleading representation by deciding to purchase and consume the Diet Fuel thinking it was a safe dietary supplement. The false and misleading representations were made over a period of months prior to Plaintiff's Decedent's death.

73. Plaintiff's Decedent relied on the false and fraudulent representations made by defendants and used Diet Fuel and the ingredients in the product in a foreseeable manner and was injured as a direct result of the defective nature of defendants' product. Because Defendants TWIN LABS, GNC, THE MALL and DOES One (1) through One-Hundred (100) were acting in concert, and as agents and joint tortfeasors they adopted and ratified that false and fraudulent statements made by TWIN LABS on the labels, in the advertisements and in the store displays.

74. But for defendants' fraud and concealment, Plaintiff's Decedent would not have consumed Diet Fuel and sustained the injuries and damages Plaintiff's Decedent is now claiming.

75. Defendants TWIN LAB, GNC, THE MALL and DOES One (1) through One Hundred (100), at all times knew of the dangerous and defective nature of Diet Fuel yet they intentionally, willfully, and recklessly concealed these dangers from Plaintiff's Decedent by continuing to manufacture, market, distribute and promote Diet Fuel and the herbal products and other products used in it as a safe product, well aware of the fraudulent misrepresentations they were making about the nature of Diet Fuel and its safety as a dietary supplement. By concealing the dangers and by marketing the product knowing of the dangers associated with the ingredients used in Diet Fuel, defendants are guilty of oppression, fraud, and

malice in that their conduct has shown willful and conscious disregard for the safety of Plaintiff's Decedent and the general public for the sole purpose of defendants' economic gain. By marketing a product with ingredients defendants knew were dangerous and could cause harm and injury, without proper warnings and instructions to Plaintiff's Decedent and the general public, defendants have showed a conscious and intentional, willful and reckless disregard for Plaintiff's Decedent's safety and well-being as well as the safety and well-being of the general public. By marketing the product using false and misleading labeling and advertising, defendants acted with fraud and with the extreme indifference to the health and safety and rights of Plaintiff's Decedent, as well as the general public.

76.    Defendants' despicable conduct and extreme indifference to the health and well-being of consumers like Plaintiff's Decedent is further demonstrated by the fact that after FDA issued Health Alerts and after several states banned products containing Ma Huang, defendants continued to manufacture and sell Diet Fuel.

77.    At all times defendants' conduct involved intentional misrepresentations of material facts known to the defendants with the intent to deceive Plaintiff's Decedent and other consumers in order to make a profit by causing them to believe that Diet Fuel was a safe dietary supplement that contained no dangerous drugs that would help people build muscles through all natural and safe ingredients.

78.    Defendants' conduct was carried on with a willful and conscious disregard for the safety of Plaintiff's Decedent since defendants knew that Diet Fuel would not build muscles or promote lean muscle to give your body shape and tone.

27

79.     Defendants knew that Diet Fuel was intended to cause weight loss by giving

people all natural stimulant drugs and diuretics that were dangerous and known to

cause adverse health effects including Plaintiff's Decedent's death.

80.     Defendants knew that this was the intended effects of Diet Fuel since it is well

established in the literature in existence at the time Diet Fuel was first

manufactured and sold that Ma Huang contained ephedra, a stimuli and diuretic,

and that caffeine was a known stimulant and diuretic.

81.     Defendants knew of the dangers associated with the ingredients used in Diet Fuel

before Plaintiff's Decedent purchased defendants' product.

82.     Defendants, and each of them, acting in concert, possessed superior knowledge

and failed to disclose that superior knowledge to consumers of Diet Fuel,

including the Plaintiff's Decedent.  Defendants' failure to disclose said

knowledge to Plaintiff's Decedent and the general community that Diet Fuel was

not a safe dietary supplement, but rather, contained drugs which included harmful

stimulants and diuretic ingredients that could and did cause harm to Plaintiff's

Decedent.

83.     At all relevant times, defendants and each of them made the aforementioned

representations regarding the safety and efficacy of Diet Fuel to Plaintiff's

Decedent and the members of the general public at large who were all ignorant of

the falsity of the defendants' representation and reasonably believed them to be

true.  In reliance upon these false and fraudulent representations of defendants

and each of them, Plaintiff's Decedent was induced to, and did, buy and use Diet

Fuel in reliance on defendants' fraud.  Had Plaintiff's Decedent known the true

28

facts, Plaintiff's Decedent would not have ingested Diet Fuel. The reliance of Plaintiff's Decedent and the members of the general public upon defendants' fraud and misrepresentation was justified because the representations were made by individuals and entities who appeared to be or were in a superior position to know the true facts.

84.     As a proximate and direct result of defendants' fraud and deceit and conspiracy to commit fraud and the facts alleged herein, Plaintiff sustained the injuries and damages set forth herein.

WHEREFORE, Plaintiff demands judgment on behalf of all survivors and the estate of LISA PETERSON, for damages against TWIN LAB, GNC, THE MALL and DOES One (1) through One-Hundred (100), costs of this action, and such further and other relief as the Court may deem just and appropriate. Plaintiff hereby demands trial by jury.

## COUNT VI
### NEGLIGENCE OF THE MALL

Plaintiff, JOHN PETERSON, as Personal Representative of the Estate of LISA PETERSON, deceased, sues the Defendant, THE MALL, for the wrongful death of LISA PETERSON and alleges:

85.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 46, inclusive, of the complaint herein.

86.     THE MALL owned and operated a retail shopping center in Clearwater, Pinellas County Florida.

87.     THE MALL rented space in the shopping center to persons and/or businesses in

the retail sales market, including the Defendant GNC.

88.    In addition to being a landlord, THE MALL actively advertised, promoted and otherwise assisted their tenants, including Defendant GNC, in attracting customers.

89.    THE MALL represented, promoted and/or advertised Defendant GNC as a health food store.

90.    THE MALL had a non-delegable duty to provide their invitees accurate information and/or provide warnings regarding any dangers posed by the activities of the tenants of the shopping center.

91.    THE MALL, by representing, promoting and/or advertising its tenant, Defendant GNC, as a health food store, when it knew or should have known that GNC sold drug containing products which could cause injury to persons who consumed those products, negligently misrepresented to the Plaintiff's Decedent and the general public the safety of such products.

92.    As a proximate result of THE MALL's negligent misrepresentations of GNC as a health food store, Plaintiff's Decedent purchased Diet Fuel from Defendant GNC at the shopping center owned and operated by THE MALL.

93.    As a proximate result of the herein described conduct of THE MALL and the defects in Diet Fuel, Plaintiff's Decedent was caused to suffer grievous, serious and severe injuries both physically and emotionally thereby causing LISA PETERSON's death.

WHEREFORE, Plaintiff demands judgment on behalf of all survivors and the estate of LISA PETERSON, for damages against THE MALL, costs of this action, and such

30

further and other relief as the Court may deem just and appropriate.  Plaintiff hereby

demands trial by jury.


DATED: _Nov. 29th_, 2001.


Jeffrey R. Shelquist, Esquire    FB#971375
The Law Office of Jeffrey R. Shelquist, P.A.
3001 N. Rocky Point Drive East
Suite 200
Tampa, FL 33607
813-281-5481
813-281-5482 (fax)
Attorney for Plaintiff


LAW OFFICES OF
CHRISTOPHER E. GRELL
The Broadlake Plaza
360 22ND Street, Suite 320
Oakland, CA  94612
Telephone:  (510) 832-2980
Attorney for Plaintiff